```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        NORTHERN DIVISION


JEREMY TRAVIS PAIGE                                    PLAINTIFF

VERSUS                           CAUSE NO. 3:20-CV-00197-DPJ-FKB

RANKIN COUNTY SHERIFF DEPARTMENT, ET AL               DEFENDANTS



                        OMNIBUS HEARING


             BEFORE THE HONORABLE JUDGE F. KEITH BALL
                  UNITED STATES MAGISTRATE JUDGE
                       SEPTEMBER 30, 2020
                       JACKSON, MISSISSIPPI
```

APPEARANCES:

FOR THE PLAINTIFF: MR. JEREMY TRAVIS PAIGE, PRO SE

FOR THE DEFENDANT: JASON E. DARE, ESQUIRE




REPORTED BY:

   TAMIKA T. BARTEE, B.C.R., CCR #1782
   OFFICIAL COURT REPORTER
   501 E. Court Street, Suite 2.500
   Jackson, Mississippi  39201
   Telephone:  (601)608-4188
   E-mail:  Tamika_Bartee@mssd.uscourts.gov

**TABLE OF CONTENTS**

Style and Appearances...................................... 1

Proceeding................................................. 3


WITNESS:   JEREMY PAIGE

Examination By The Court................................... 6

Cross-Examination By Mr. Dare.............................. 13


Certificate Page.......................................... 16

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1          THE COURT:  All right.  Mr. Paige, can you hear that?
 2          MR. PAIGE:  Yes, sir.
 3          THE COURT:  The Court calls Jeremy Travis Paige v. Rankin
 4   County.  This is Civil Action No. 3:20-cv-197.
 5          (Witness sworn.)
 6          MR. PAIGE:  Yes, sir.
 7          THE COURT:  We are going to need you to speak up.  Like
 8   when you said "yes, sir," I can barely hear you.
 9          I'll also have defense counsel identify himself for the
10   record, as well as the defendants on whose behalf you're
11   appearing.
12          MR. DARE:  Your Honor, Jason Dare here on behalf of Rankin
13   County Mississippi, Sheriff Bryan Bailey and Investigator Brett
14   McAlpin.
15          THE COURT:  All right.  Mr. Paige, my name is Keith Ball.
16   I am the magistrate judge that's assigned to your case.  There are
17   two judges assigned to your case.  I'm assigned as the magistrate
18   judge, and also there's a district judge, specifically, District
19   Judge Dan Jordan.
20          Before we get into the case a little bit, I do want to
21   tell you, your case falls under the Prison Litigation Reform Act.
22   One of the things that the Court must do in these kinds of cases
23   is to screen your complaint and determine whether you have stated
24   a claim that can go further in the court based on the applicable
25   law.
```

1           Before we get into talking about your complaint, I want to
2  deal with one procedural issue.  Specifically, as I said, there
3  are two judges assigned to your case.  You can consent to
4  magistrate judge jurisdiction, which just means that I would be
5  the only judge on the case and Judge Jordan would be taken off the
6  case.  If you leave it like it is with two judges, I am still
7  going to do what's called a report and recommendation to District
8  Judge Dan Jordan recommending to him what his ruling should be on
9  certain things that have to be decided by a judge.  He will either
10 adopt my opinions or he will do his own.  But if you consent to
11 magistrate judge jurisdiction, we skip that step and I can rule on
12 whatever needs to be ruled on by a judge.
13          Also -- so the case may go a little bit quicker.  Also,
14 Judge Jordan has cases set for trial every month; I do not.  And
15 therefore, I may be able to get to the case a little bit quicker.
16 Also with the coronavirus pandemic restrictions and limiting order
17 that we're operating under in the court, Judge Jordan is going to
18 have some cases backed up for trial once we start trying cases
19 again.  I will not have that same situation.
20          So I may be able to get to your case a little bit quicker.
21 I do want you to know if you consent to me being the only judge, I
22 am going to be applying the same law that Judge Jordan would and
23 the same rules of evidence, the same rules of procedure.  And if
24 you disagreed with any of my decisions, you could appeal my
25 decision to the Fifth Circuit Court of Appeals, just like you

1  could appeal the decision from Judge Jordan.  But it is totally
2  the party's decision.  I first ask you, Mr. Paige, do you want to
3  consent to magistrate judge jurisdiction?
4       MR. PAIGE:  No, sir.  I just don't understand the
5  question.
6       THE COURT:  Okay.  All right.  Is there -- it just means
7  that instead of having me on the case and Judge Jordan on the
8  case, you would just have me on the case.
9       MR. PAIGE:  Yes, sir.  I agree with you.
10      THE COURT:  All right.  I don't usually say this before
11 the plaintiff answers, but now that you have, I will tell you, in
12 most of these cases the parties do consent to magistrate judge
13 jurisdiction.  That's the -- in the overwhelming majority of them,
14 they do.  But everybody has to consent in order for me to proceed
15 under a consent.
16      So, Mr. Dare, do you consent on behalf of your clients?
17      MR. DARE:  The defendants also consent, Your Honor.
18      THE COURT:  All right.  We will send -- there's a form
19 that has to be signed.  My office will send that to you, Mr.
20 Paige, and if you'll just sign that and send it back and we'll
21 also send it to Mr. Dare.  And if you'll sign and return that
22 form.
23      All right.  Mr. Paige, we're to the main part of the
24 hearing today, which is to -- it is basically an opportunity for
25 me to ask you questions about things that I may need clarification

1  on.  We have your complaint.  You obviously don't have to repeat
2  everything that's in your complaint.  But what I've found to be
3  helpful in these situations is for me to specifically ask why you
4  are suing each one of the defendants and give you an opportunity
5  to basically explain that to me.
6          Now, like I said, I already have your complaint and I know
7  what's in there, but just to give you an opportunity and just to
8  kind of zero in on specifically what facts you are alleging in
9  support of your lawsuit with respect to each one of the
10 defendants.
11         So let me ask you first of all, why are you suing Rankin
12 County?
13         MR. PAIGE:  Because Rankin County sheriff was the warden.
14         THE COURT:  Okay.  Any other reason?
15         MR. PAIGE:  No, sir.
16         THE COURT:  What about Brett McAlpin.  Why are you suing
17 Brett McAlpin?
18         MR. PAIGE:  (Unintelligible).
19         THE COURT:  Hang on just a second.  Could you repeat that
20 again.  And I don't know where the microphone is, but if you can
21 do your best to try to kind of --
22         MR. PAIGE:  I was looking for it, but I don't see it, Your
23 Honor.
24         THE COURT:  When you lean forward it seems to get a little
25 bit better.

1        MR. PAIGE:  Can you hear me now better?

2        THE COURT:  Much better.  So I was asking you about why
3   you were suing Brett McAlpin.  Could you repeat that for me.

4        MR. PAIGE:  Brett McAlpin -- (unintelligible).

5        THE COURT:  We can't hear you.  Do you have anybody that
6   is in that room with you?  Is there an officer in there now?

7        MR. PAIGE:  Yes, sir.

8        THE COURT:  All right.  The problem seems to be that he'll
9   start talking and it is like the microphone just quits working.  I
10  don't know.

11       UNIDENTIFIED SPEAKER:  Is that better?

12       THE COURT:  Much better.

13       Let's try it again.  And maybe it would be better for me
14  to approach it this way.  Your lawsuit relates to an incident that
15  occurred on August 1st, 2018.  Is that right?

16       MR. PAIGE:  Yes, sir.

17       THE COURT:  And specifically, you said that you were
18  stopped by Detective McAlpin.  Tell me exactly what time of day
19  was it.  Were you driving a car?  Tell me exactly what happened.

20       MR. PAIGE:  Yes, sir.  It was between 6:30 and 7:00 in the
21  evening.  I stopped at the red light and I was --

22       THE COURT:  Let's just hang on for a second.  You're going
23  out on us again.  Hang on just a second.  Can you decrease the
24  volume on whatever you're speaking into?  What is happening is
25  when he starts talking after a sentence or two, it starts cutting

1  out and it --
2         My IT person here is saying that it could be that it's
3  kind of looping around and you know, just how -- sometimes if you
4  have too much background noise those -- if they're like voice
5  sensitive kind of microphones.  If they have a certain
6  sensitivity, they can quit working in such a way that you can't
7  pick up what people are saying.  Why don't you say a little of
8  something and then.  Say a couple of sentences.
9         (Equipment check.)
10        THE COURT:  All right.  We're going to try it again.
11 Thank you.
12        Okay.  Mr. Paige, I was asking you, you were driving a car
13 on this date and he stopped you, or were you walking?  You said it
14 was in the evening.  Go ahead.
15        MR. PAIGE:  Yes, sir.  I was driving a car, it was between
16 6:30 and 7:00 in the evening.
17        THE COURT:  Tell me what happened.  In your own words,
18 tell me what happened.
19        MR. PAIGE:  Yes, sir.  I was at a red light waiting to
20 make a left on Pearson Road in Pearl.  I was between the Ruby
21 Tuesday -- I was on Pine Forest Drive.  I was fixing to take a
22 left onto Pearson Road to go to the dollar store when behind me in
23 my rearview mirror, I seen people running up behind me and they
24 were directing cars to get out of the way.  Brett McAlpin, he was
25 parked in the middle of Pearson Road and he walked up to the car

1   with a gun drawn and he snatched me out by the window of the car
2   and they started beating me.  It was two women that were standing
3   out in front of Ruby Tuesday and I started yelling for help.
4           THE COURT:  When you say "beat you," McAlpin is the one
5   that beat you?
6           MR. PAIGE:  It was several of the officers.  I don't
7   really know which one was involved.  It was several of them.
8           THE COURT:  So it is your testimony that they pulled you
9   out of the car and just started punching you?
10          MR. PAIGE:  Yes, sir.
11          THE COURT:  Where did they punch you?
12          MR. PAIGE:  In the face.
13          THE COURT:  All right.  Go ahead.
14          MR. PAIGE:  Yes, sir.  And after that, I was yelling for
15  two women out there at Ruby Tuesday.  They were standing outside
16  there smoking cigarettes.  And they handcuffed me and I don't know
17  how I ended up back at my house because I think I was knocked out
18  after that because they hit me again.  And I was dragged through
19  my yard.  And when I woke up, I was getting dragged into my
20  roommate's bedroom.
21          THE COURT:  Who was dragging you?
22          MR. PAIGE:  The narcotics.
23          MR. DARE:  Your Honor, I hate to interrupt.  I believe
24  Mr. Paige is a pretrial, I think.  I do not know if he has been
25  through his criminal trial on these possession charges.  And so

1   accordingly --
2            THE COURT:  Thank you for telling me that.
3            Mr. Paige, what is the status of your criminal case?
4            MR. PAIGE:  It is set for trial the 19th of October.
5            THE COURT:  I want to advise you that you obviously have a
6   Fifth Amendment right to remain silent and everything that you're
7   saying right now is under oath, and it is being transcribed and it
8   is being taken down by a court reporter --
9            MR. PAIGE:  Yes, sir.
10           THE COURT:  -- and will be available to anyone that wants
11  to get a copy of it.  So you have the right -- you know, you filed
12  this lawsuit.  I just want to advise you that anything that you
13  say and testify to, or anything that you say in this hearing today
14  can be used against you in that trial.  Do you understand that?
15           MR. PAIGE:  Yes, sir.
16           THE COURT:  And you have the right to remain silent should
17  you wish to remain silent on any of that.
18           MR. PAIGE:  Yes, sir.
19           THE COURT:  Obviously, to pursue the case, you'll have to
20  provide sufficient facts for this Court to determine the facts of
21  your case and whether you have stated a claim.  But, with those --
22  with that caution and with that warning and direction, you may
23  proceed.
24           MR. PAIGE:  Yes, sir.  Anyway, I was heading back to my
25  house where I was taken into my roommate's -- her bedroom, and

1  that's where I was -- (unintelligible).
2       THE COURT: Hang on a second. One of the main things is,
3  if you'll talk slowly, we don't have any problem. But when you
4  start talking faster or louder, it causes a problem. So if you
5  would just kind of keep the volume of your voice down and talk
6  slower, I think we're going to be okay. Go ahead.
7       MR. PAIGE: Anyway, I was taken back -- they carried me
8  into my roommate's room and they told my roommate, you know, this
9  guy named Tommy -- go in the living room. They took me in her
10 bedroom and that's where the beating continued until 1:30 in the
11 morning.
12      THE COURT: And how long -- did you say "beating"?
13      MR. PAIGE: Yes, sir.
14      THE COURT: All right. And how long did that last?
15      MR. PAIGE: Until 1:30 a.m.
16      THE COURT: Approximately, when did it start?
17      MR. PAIGE: It started when I was pulled over, sir.
18      THE COURT: And what time was that -- so approximately
19 7:00 p.m. that night until 1:30 the next morning?
20      MR. PAIGE: Yes, sir.
21      THE COURT: All right. Did you receive any medical
22 attention after that?
23      MR. PAIGE: There were two nurses waiting on me when I got
24 booked in the jail, sir.
25      THE COURT: All right. And you were booked in the jail on

1  August 2nd, 2018, at about 1:30 in the morning?
2          MR. PAIGE:  Yes, sir.
3          THE COURT:  What injuries did you have?
4          MR. PAIGE:  Three broken ribs, a broken nose.  My eyes
5  were nearly shut and my head -- they took pictures of it.  They
6  took pictures.  The sergeant said that she wanted to clear the
7  jail from anything that happened to me before I was brought to
8  jail.
9          THE COURT:  All right.  And how long did they keep you at
10 your house before they took you to the jail?
11         MR. PAIGE:  I didn't get to the jail until 1:30 in the
12 morning, sir.  It was right after I was pulled over they carried
13 me to my house, sir.
14         THE COURT:  All right.  And what medical attention did you
15 get after you --
16         MR. PAIGE:  I don't really think it was medical attention,
17 sir.  I think it was more along the lines to clean me up for my
18 mugshot pictures.
19         THE COURT:  Did you ever have a doctor tell you that you
20 had broken ribs?
21         MR. PAIGE:  No, sir.  The nurse that was working that
22 night told me.
23         THE COURT:  Did they take X-rays?
24         MR. PAIGE:  No, sir.  He felt my ribs.
25         THE COURT:  Did you ever have any treatment after that by

1  a physician?
2       MR. PAIGE:  No, sir.  I was thrown in the cell on the
3  floor for the next three weeks.  After they took the pictures, the
4  nurses didn't even attempt to clean me up no more.
5       THE COURT:  All right.  Mr. Dare, do you have any
6  questions?
7                       CROSS-EXAMINATION
8  BY MR. DARE:
9  Q.   I want to make sure -- I am getting a lot of feedback.  I
10 apologize.
11      Mr. Paige, are you basing any of your claims on what occurred
12 in the jail?
13 A.   In the jail, no, sir.  Didn't nothing occur in the jail.
14 Q.   And you said that you agree that you received medical
15 attention once you got to the jail, correct?
16 A.   It wasn't medical attention.  It was more along the lines of
17 cleaning me up for my mugshot.  I mean medical attention, they
18 would have obviously done -- (unintelligible).
19 Q.   You've been incarcerated in the jail ever since?
20 A.   No, sir.  I was sent to MDOC in 2018 for parole violation
21 right after that.  I was complaining about my medical issues when
22 they sent me to MDOC.
23      MR. DARE:  Your Honor, I would respectfully request to be
24 able to get a HIPPA compliance authorization to obtain any medical
25 records from MDOC.  Other than that, Your Honor, I may take

1  Mr. Paige's deposition if the Court orders discovery and if the
2  Court deems it necessary.  I don't have any further questions at
3  this time.
4         THE COURT:  All right.  Mr. Paige, anyone that is pursuing
5  recovery for personal injuries in federal court is required to
6  sign a medical authorization form so that the defendant can get
7  all of your medical records.  So the defendant will be sending you
8  one of those forms, and if you will sign that and send it back to
9  the defendant.  That is something that if you want to pursue the
10 case you're going to have to sign.
11        All right.  Mr. Dare, do you have any documents that you
12 will be producing to the plaintiff?
13        MR. DARE:  I will.  Your Honor, this afternoon I will file
14 a witness list and I will produce copies of Mr. Paige's inmate
15 records and medical records.  I cannot produce the investigative
16 file since the criminal action is still ongoing but can do so
17 after his criminal trial.
18        THE COURT:  I understand.  All right.  That will be the
19 order of the Court to produce that.  I understand that there
20 are -- due to the ongoing investigation and the fact that the case
21 has not gone to trial yet, there may be certain relevant documents
22 that can't be produced yet at this time.  All right.  For those
23 that can, the Court orders that you go ahead and produce those.
24 We have done what we need to do today.
25        So thank you very much, Mr. Paige.  We'll take this matter

1  under advisement and issue the appropriate order.  Thank you.  We
2  are adjourned.
3           (Court adjourned at 2:00 p.m.)

1          COURT REPORTER'S CERTIFICATE

2

3       I, Tamika T. Bartee, Certified Court Reporter, in and for

4  the State of Mississippi, Official Court Reporter for the United

5  States District Court, Southern District of Mississippi, do hereby

6  certify that the above and foregoing pages contain a full, true,

7  and correct transcript of the proceedings had in the aforenamed

8  case at the time and place indicated, which proceedings were

9  recorded by me to the best of my skill and ability.

10      I further certify that the transcript fees and format

11 comply with those prescribed by the Court and Judicial Conference

12 of the United States.

13      THIS the 16th day of October, 2020.

14

15

16                    /s/ Tamika T. Bartee, CCR

17                    Tamika T. Bartee, CCR #1782
                      Official Court Reporter
18                    United States District Court
                      Tamika_Bartee@mssd.uscourts.gov
19

20

21

22

23

24

25